1

1                     UNITED STATES OF AMERICA
                   EASTERN DISTRICT OF MISSOURI
2                     SOUTHEASTERN DIVISION

3    JORDAN BLAIR,                 )
                         )
4         Plaintiff,     )
                         )
5      vs.              )  No. 1:02-CV-88 CAS
                         )
6    BOB WILLS, et al.,     )
                         )
7         Defendant.     )

8

                 TRANSCRIPT OF MOTION HEARING
9

         BEFORE THE HONORABLE CHARLES A. SHAW
10             UNITED STATES DISTRICT JUDGE

11                September 23, 2003

12

    APPEARANCES TELEPHONICALLY:
13

    For Plaintiff:     Mr. Oscar Stilley
14                    5111 Rogers Avenue, Suite 520
                    Central Mall Plaza
15                    Fort Smith, AR  72903

16    For Defendant:     Mr. John L. Oliver, Jr.
                    OLIVER AND OLIVER
17                    400 Broadway, P.O. Box 559
                    Cape Girardeau, MO  63702
18

                    Mr. John D. Briggs
19                    BROWN AND JAMES
                    1010 Market Street, 20th Floor
20                    St. Louis, MO  63101

21    REPORTED BY:       SUSAN R. MORAN, RMR
                    Official Court Reporter
22                    111 South 10th Street
                    St. Louis, MO  63102
23                    (314) 244-7983

24

    Proceedings recorded by mechanical stenography, produced by
25    computer-aided transcription.

1          (The following proceedings were held in chambers via

2     telephone on September 23, 2003 at 11:40 a.m.:)

3          THE COURT:  And who else do I have besides --

4          MR. STILLEY:  Oscar Stilley here.

5          THE COURT:  How you doing?

6          MR. STILLEY:  Fine, Judge.

7          THE COURT:  Okay.

8          MR. BRIGGS:  Judge, John Briggs from Brown & James.

9          THE COURT:  B-r-i-g-g-s?

10         MR. BRIGGS:  B-r-i-g-g-s.

11         THE COURT:  Listen, let me say this, I have my court

12    reporter here.  I've got you all on speaker phone as well as

13    my law clerk Ebony Woods.  So Sue Moran is the court reporter

14    and Ebony Woods is here because I wanted to make a record of

15    this.  Since you all weren't here, we need to make a record

16    on these various issues that are involved here.

17         What about -- tell me this.  First of all, what

18    about this ADR, the deadline for that was you all were

19    supposed to submit something by the 22nd, which was

20    yesterday, has that been done?  Has something happened on

21    that?

22         MR. STILLEY:  It has.  Judge, we just solidified an

23    agreement on who we were going to use and what we were going

24    to do as of today.  I called over to the clerk today.

25         THE COURT:  You know, to help out Sue, you're going

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    to have to say who you are.

2         MR. STILLEY:  Okay, this is Oscar Stilley, attorney

3    for Jordan Blair.  What I was saying, we have solidified

4    arrangements for mediation.  And I'll be -- I'm planning to

5    overnight the form to the clerk, the completed form today.

6         THE COURT:  Okay.  Very well.  That's good.  Now,

7    why don't we go ahead and take a look at these various

8    discovery problems we've got here.  I think the first thing

9    is about some depositions.  What's the situation here?  I

10   think there's a request to compel defendants to be deposed.

11   What's that situation?

12        MR. STILLEY:  Your Honor, this is Oscar Stilley

13   here.  I have been trying for many months to get depositions

14   set up.  I haven't been able to do that.  They tell me now at

15   this point in time they are going to allow me to do the

16   depositions on the 6th and 7th of October and then again on

17   the 16th and 17th, the 17th being the deadline for completion

18   of discovery.

19        THE COURT:  Well, I've got a date -- I guess maybe

20   for that, I don't know.  But I've got a deadline date of

21   October 22nd.

22        MR. STILLEY:  Oh, I bet you're right.  I bet you're

23   right.  I was just recalling from memory there.

24        THE COURT:  Okay.  Well, so you say that's resolved,

25   so I guess that's moot.

1    MR. STILLEY:  Well, actually it's not.  What I'd

2  like to do is to get the Court to order these depositions to

3  take place and put some threat of sanctions to make sure the

4  defendants follow through on that to do the depositions.

5    THE COURT:  Well, you know, you seem to be

6  suggesting that these gentlemen are going to act in bad

7  faith.  All the lawyers are officers of the court.

8    MR. STILLEY:  That's true.

9    THE COURT:  They've been deputized, you know what I

10  mean, just like you've been deputized since you came up here.

11  And if you act bad, I have to do something bad to you.  You

12  see what I'm saying?

13    MR. STILLEY:  I do.  I certainly understand that.

14    THE COURT:  And my philosophy is like the great

15  California philosopher, Rodney King, who said, "Can't we all

16  just get along, please?"  You know, I'm trying to live in

17  peace up here, and the people come up here with disturbances,

18  I have to do something bad to them so they will leave me

19  alone.  We need to get along.

20    If they are giving you deposition dates, what

21  indication do you have that they are not going to honor them?

22    MR. STILLEY:  Judge Shaw, the only reason that I

23  would question that is the fact that I have been trying for

24  so many months, and I even came up and supplied the plaintiff

25  and another witness for deposition, and not one single person

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    showed up despite the fact I this noticed them up for

2    deposition at that time.  I'm just like you, I like to get

3    along and go along.  And we've got enough time.  We can just

4    see what happens on the 6th and the 7th.  And if they'll come

5    and show up for depositions, we don't need to go any further.

6              THE COURT:  Mr. Oliver, Mr. Briggs, you all want to

7    respond?

8              MR. OLIVER:  Judge, this is John Oliver.  The people

9    that we've identified to Mr. Stilley who will be available

10   will be available on the 6th and 7th.  And if we don't finish

11   on the 16th and 17th, then, you know, I've confirmed this

12   morning they will be available, and they will be available.

13   I don't know what else there is to say.  I mean, it's not

14   like we haven't given him dates before, we just haven't been

15   able to hit a mutually agreeable time.  I think the issue is

16   closed.

17             THE COURT:  Well, I don't see that there's a problem

18   right now.  I'm going to deny this as moot for the time

19   being.  Your discovery is supposed to close the 22nd, so

20   let's go ahead and get it done and move on.

21             I'm trying to -- we had a retreat and the judges had

22   somebody in from Washington talk about how we're supposed to

23   do justice.  And I said, wait a minute, a famous lawyer told

24   me that if he ever came before me, he didn't want any

25   justice, that was some bad stuff, he wanted mercy.  So I've

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

1   kind of concluded that maybe justice is in the eye of the

2   beholder.  And we are here to dispose of cases as judges, you

3   know, and hopefully justice is done, but I think that that

4   depends upon who is on what end of it.

5          But let's keep these things moving so at least we

6   can dispose of cases and we'll -- people will figure out on

7   their own whether or not justice was done I guess.

8          So as far as I'm concerned, that is moot.  Now, what

9   about paying you -- Mr. Stilley wanted to pay mileage for the

10  deposition of your witness.

11         MR. STILLEY:  Yes.  Well, I don't know if you'd call

12  it my witness, it is a witness in the case.

13         THE COURT:  It's Teri Young?

14         MR. STILLEY:  Yes.

15         THE COURT:  Okay.  Tell me about that.

16         MR. STILLEY:  Okay.  See, we had this scheduled and

17  it's kind of a convoluted situation.

18         THE COURT:  Well, give me the short version.

19         MR. STILLEY:  Okay.  They subpoenaed her in

20  Arkansas, then we agreed to do it in St. Louis, and then we

21  agreed to do it in Cape Girardeau.  They came and gave that

22  deposition, and I was wanting the mileage and fees on that.

23         THE COURT:  Well, what about that, Mr. Oliver?

24         MR. OLIVER:  Well, Judge Shaw, this is pretty

25  straightforward.  She was subpoenaed to appear in her home

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    town.  We wanted to go to her home town.  There were reasons

2    for going to her home town which included access to

3    documents.  And Mr. Stilley didn't want to produce her there.

4    This woman incidentally is the person who is doing the

5    legwork for Mr. Stilley in this case and she has actually

6    paid him at least $5,000.  So, I mean, it's not like she's an

7    independent person.

8                THE COURT:  You mean he's paid her?

9                MR. OLIVER:  No, she's paid him.  And Mr. Stilley

10   wanted to bring his client up here for the obvious reason I

11   think, Your Honor, if he would have shown up in Arkansas,

12   they would have arrested him because he's got a fugitive

13   felony warrant out for him in Arkansas, so he voluntarily

14   brought him up here.  He chose the place.  We were willing to

15   come to her home town and he chose the place, and I don't

16   think we should pay for his choice.

17               THE COURT:  Sounds good to me.  What about that,

18   Mr. Stilley?

19               MR. STILLEY:  Judge Shaw, if you don't mind, I'll

20   just let you make the call on that.

21               THE COURT:  Well, that was the call, that's denied.

22               MR. STILLEY:  Okay.

23               THE COURT:  Let's see what we got next.

24   Interrogatories, you want some answers so interrogatories?

25               MR. STILLEY:  That is correct, Your Honor.

```
 1            THE COURT:  Why don't we go with them.  No. 5, the
 2    names of all students attending Mountain Park Baptist and
 3    contact information.  What about that?
 4            MR. OLIVER:  Well, Your Honor, that's protected by
 5    federal law and Missouri law.  The school can't give it out,
 6    not to mention I know the Court's quite familiar with the
 7    whole number of --
 8            THE COURT:  Oh, yeah.
 9            MR. OLIVER:  -- cases, particularly National
10    Association of Advancement of Colored People versus Alabama,
11    which makes these church type organizations member lists
12    confidential.  Plus with students, the federal -- there's a
13    federal statute.  There's a Missouri statute that prevents
14    the name and there's a -- revealing the names and there's a
15    Florida statute that prevents leaving the names -- revealing
16    the names.  And quite frankly, Your Honor, anybody that
17    Oscar -- and I'm not accusing him of doing this individually,
18    because I don't know, but there's a web site which solicits
19    past members of Mountain Park and Palm Lane, the two church
20    defendants in here that solicit past graduates or attendees
21    to hire Oscar and tells them his phone number and even has a
22    questionnaire, so that, I mean, he has access to anybody that
23    wants to voluntarily come forward.  And I think quite
24    frankly, we're totally forbidden by law from revealing those
25    names.
```

```
1            THE COURT:  I would tend to agree with you.
2      Mr. Stilley, were you not aware of these prohibitions?
3            MR. STILLEY:  Your Honor, Oscar Stilley here.  I
4      understood that the defendants were saying that these
5      prohibitions didn't actually cover them, that they were just
6      using them as an analogy to say they should be given the same
7      treatment because this is not a publicly funded school.  And
8      in this case -- now they cited some cases, but in this case
9      there is no attempt to get information that would be
10     embarrassing or harmful to the student in any way or the
11     child.
12           THE COURT:  Right, right.  I'm denying this.
13           MR. STILLEY:  Okay.
14           THE COURT:  That's denied.
15           MR. STILLEY:  Okay.
16           THE COURT:  Now, your No. 6, all defense witnesses
17     and contact information.  That sounds like it might be
18     reasonable.  What about that, Mr. Oliver?
19           MR. OLIVER:  Judge, in fact, one of your opinions
20     says that he gets that when the pretrial order is due, and
21     it's work product till then.
22           THE COURT:  It sounds like you might have me there.
23     What's the problem, Mr. Stilley?  I mean, looks like that's
24     the way it's going to be.
25           MR. STILLEY:  Your Honor, I don't think that's
```

1  correct.  I don't think -- I mean, the whole idea here of

2  what we're doing is to try to settle disputes, and if you

3  have to wait till that long in order to find out who the

4  witnesses are, then that's going to be detrimental to

5  settlement.

6        THE COURT:  Well, why don't you more particularize

7  your question then in terms of who knows A, B, I mean, if a

8  person has specific information rather than all witnesses and

9  so forth.  That's a bit broad and it's not really directed to

10 something.  You know, if there's something that's directed to

11 an issue or something, then maybe we're looking at a

12 different situation.  But you're asking for everybody under

13 the sun.  And, you know, I think it's overly broad.  I'm

14 going to deny this without prejudice.  You're going to have

15 to do something better than that with your question.

16        MR. STILLEY:  Okay, Judge.

17        THE COURT:  Okay.  It's just overly broad and not

18 directed to any specific thing in controversy or issues in

19 the case.

20        Now, your No. 7, all employees of Mountain Park and

21 Palm Lane Academy.

22        MR. OLIVER:  Judge, John Oliver.  This one is not as

23 clear.  As to the hours of work and their pay, you know,

24 since we're using Missouri privilege law, the hours of work

25 and pay constitute what the Missouri Court of Appeals calls a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    fundamental right of privacy in employment records.  I'll be

2    honest with you, I can't find anything that says names are

3    protected, but the hours of work are.  And that's to protect

4    ourselves, that's why we made the objection.

5            THE COURT:  Okay.  Mr. Stilley, it seems that

6    Mr. Oliver is willing to give you the names but not the

7    information about their pay and hours.  What about that, you

8    satisfied with that?

9            MR. STILLEY:  Your Honor, I would take that I can

10   contact those individuals and find out information about the

11   rest of the information that I need.

12           MR. OLIVER:  Oscar, let me tell you just so there's

13   no question.  Your Honor, in case this comes up, I'm sure the

14   Court is aware of the Missouri Supreme Court decision in

15   State ex rel. Pitts v. Roberts that says Mr. Stilley can't

16   contact our employees, that that's a violation of Rule 4.

17   And I wouldn't want any misunderstanding about that.  You

18   know, Rule 4 of the Rules of Professional Responsibility

19   enforced in Missouri adopted by this court would prevent that

20   contact even though under the IBM decision -- well, you've

21   written about it a couple times, Judge.  Some of these people

22   would not be management people.

23           THE COURT:  Okay.  What about that, Mr. Stilley?

24           MR. STILLEY:  Your Honor, my position on it would be

25   if that's the way they feel about it, I can do depositions on

1   them.

2          THE COURT:  Fine.

3          MR. STILLEY:  I don't think it would take a great

4   deal of time for the information I need.

5          THE COURT:  Fine, it's all good.  Let's move on to

6   the next matter.  That's denied as moot because you all have

7   resolved that.

8          Now we're going to your No. 10, all defendant assets

9   greater than $1,000 with description.  What's all of this,

10  Mr. Stilley?

11         MR. STILLEY:  Your Honor, on our punitive damage

12  case, the wealth and income of the defendant would be a

13  proper matter for the jury to consider in deciding punitive

14  damages.

15         THE COURT:  Well, okay.  What about it, Mr. Oliver?

16         MR. OLIVER:  Judge, there's a Missouri Supreme Court

17  case that says that the financial statements -- that in a

18  punitive damage case, we've got to give up the financial

19  statement to the extent that there is a financial statement.

20         THE COURT:  Right, net worth.  We'll deal with net

21  worth.  I'll grant it as to net worth.  And that's that,

22  okay.

23         MR. OLIVER:  I think that's correct.

24         THE COURT:  Okay.  Granted as to net worth.

25         Okay, now we've got your No. 16, bounty hunter

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
 1    connections.  Okay.  Explain this to us, Mr. Stilley.

 2              MR. STILLEY:  On No. 16?

 3              THE COURT:  Yeah.

 4              MR. STILLEY:  Okay.  Just a second, let me look at

 5    this here.  Judge, this is --

 6              MR. OLIVER:  Judge, this is John Oliver.  I answered

 7    that question.

 8              THE COURT:  So that would be moot then?

 9              MR. STILLEY:  John, did you --

10              MR. OLIVER:  I think we did.  The answer is no,

11    there aren't any.  So I know I answered that way in the

12    amended answers for Palm Lane.

13              THE COURT:  Well, if that would be your answer too,

14    Mr. Briggs?

15              MR. BRIGGS:  Yes.

16              THE COURT:  Fine, if that's the same answer, why

17    don't you respond and then that will end that and that will

18    make that moot, okay.

19              MR. BRIGGS:  Okay.

20              THE COURT:  Let's go to No. 17, reasons why the

21    defendants denied plaintiff his liberty and the official

22    policy of Mountain Park regarding students' legal right to

23    appeal and counsel.

24              MR. OLIVER:  Judge, that exact question is turned

25    down.  I know this isn't your favorite court --
```

```
 1            THE COURT:  No. 18.

 2            MR. OLIVER:  -- on the higher floor.  In a case,

 3   Baker versus General Motors, 209 F.3d 1051, certain other

 4   brethren in black robes said that this question is -- I mean,

 5   almost exact same question is no good.  I mean, I know we

 6   don't always defer to that group of people, but at least in a

 7   discovery situation they said this is a bad question because

 8   it's work product.

 9            THE COURT:  It's a strange question.  You got

10   anything further before I deny 17 and 18, Mr. Stilley?  Do

11   you have anything you wish to say to try to make me change my

12   mind?

13            MR. STILLEY:  Yes, Your Honor.  One of the key

14   issues here is false imprisonment.  That's one of our claims.

15   And we'd like to know what their basis is for saying that

16   they had a legal right to detain him.  And I understand, you

17   know, if I would do some depositions here we would get

18   further information, but that seems to be the most basic if

19   somebody is claiming false imprisonment that the defendant

20   would have a duty to say what their basis is for holding

21   someone.

22            THE COURT:  Well, your question I don't know was

23   great in its artistry in asking that question in terms of

24   what, if any, legal basis, or I guess they may be denying

25   they detained anybody at all as far as that's concerned.
```

1    Okay.  What about that, Mr. Oliver?  He's sort of saying that

2    that's what his question is, what, if any, legal basis I

3    guess.

4            MR. OLIVER:  If he asked what our policy was, I

5    would think the question would not be objectionable as

6    opposed to what our legal theory is.  I don't mind explaining

7    our policy.

8            THE COURT:  Why don't you rephrase your question and

9    then Mr. Oliver will see about getting you an answer to that,

10   Mr. Stilley.  Okay?  Does that work that out?

11           MR. STILLEY:  I think we can work that out.

12           THE COURT:  So I'm going to deny both this 17 --

13   your interrogatory 17 and 18 without prejudice because you're

14   going to reformulate that.  You're all going to work that

15   out, okay?

16           MR. STILLEY:  Okay.

17           THE COURT:  Okay, you want some documents,

18   defendants' state and federal tax returns.  Now, I told you

19   you could get the net worth, so what's this about, the tax

20   returns?

21           MR. STILLEY:  Your Honor, I'd like to see his claim

22   of income from the operations of this boarding school.

23           THE COURT:  What about it, Mr. Oliver?

24           MR. OLIVER:  Well, Judge, we're not required to file

25   income tax returns and we don't.

1          MR. STILLEY:  Well, that satisfied it.  That moots

2     it.

3          THE COURT:  Fine, that's moot then.  Okay.  You're

4     also asking, Mr. Stilley, if any complaints or petitions

5     filed against the defendant in each state, federal court, or

6     administrative agency.

7          MR. STILLEY:  Your Honor, this is Oscar Stilley

8     here.  I don't mean to go back on you, but I do need to make

9     sure on the no returns if that on all the defendants.

10         MR. OLIVER:  The only -- I thought the only motion

11    to compel was with respect to the two legal entities, not

12    individuals.

13         MR. STILLEY:  No, it's the individuals' tax returns.

14    I want to see who is getting the income from the operations

15    of Mountain Park.

16         MR. BRIGGS:  Your Honor, this is John Briggs.  As to

17    some of these defendants, including Robert O'Brient and Bo

18    and Julie Gerhardt, they are basically just employees, and I

19    don't know what rationale there would be for producing that

20    stuff beyond just the basic statement of their net worth.  I

21    don't see what the relevance is.  I think it would be

22    inappropriate to tell them to produce that information,

23    especially since 1997.  I mean, at that point Bo and Julie

24    Gerhardt were both minors, so I'm not sure it would have any

25    relevance anyway.

1            THE COURT:  Okay.  Mr. Stilley, what about it?

2            MR. STILLEY:  Your Honor, you know, we're all

3    supposed to negotiate in good faith and try to settle issues

4    like this, and I was perfectly willing if it was too broad to

5    narrow it.  And if somebody has not filed returns, all they

6    have to say is they didn't file returns and that's okay.  But

7    if they filed those returns, I feel like that there's a

8    serious question here in this case about who is profiting

9    from this conduct, and I'd like to see it on the basis of

10   these income tax returns.

11           MR. OLIVER:  Judge, I've got a compromise, we'll

12   submit them to you under seal, and if the evidence warrants,

13   Mr. Stilley can apply to you to look.

14           THE COURT:  Well, my inclination is to deny the

15   request, the part that is moot relative to the business

16   entities.  I mean, I understand, Mr. Stilley, you are trying

17   to see who is profiting from -- I mean, you ought to be able

18   to get that with some interrogatories without -- I don't

19   know.

20           MR. STILLEY:  Your Honor, Oscar --

21           THE COURT:  I don't know that me looking at some tax

22   returns under seal is going to help anything in terms of

23   making a call on that.  It's really a basis for why you have

24   to have that that relates to this case, Mr. Stilley.

25           MR. STILLEY:  Okay.  Let me say this.  On Mountain

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

1  Park, that is the legal entity that's the corporation, and,

2  you know, those no profits have certain tax returns they are

3  required to make public, everybody can see it.

4          THE COURT:  Mr. Oliver is saying they didn't file

5  any tax returns.

6          MR. OLIVER:  Your Honor, he's talking about a Form

7  990.  And the regulations exempt churches and related

8  entities from having to file those.  I'll be glad to supply

9  Mr. Stilley with a precise -- a copy of the statute and the

10 regulation.

11         MR. STILLEY:  That satisfied me on that issue.  The

12 one that I'm looking at is Mountain Park because Mountain

13 Park is not as I understand incorporated, it's an

14 unincorporated association, and so we don't know who is

15 actually -- it's in the nature of a joint venture, and we

16 don't know who is taking the profit off that, who is making

17 the money off operations at Mountain Park.

18         MR. OLIVER:  My answer applied to Mountain Park and

19 Palm Lane, Oscar.

20         MR. STILLEY:  I understand as to entity tax returns.

21 But Mountain Park, correct me if I'm wrong, it is not either

22 a corporation or an entity that is recognized by --

23         MR. OLIVER:  It's a voluntary unincorporated

24 association, to wit, a church.  It is specifically exempt

25 from filing requirements.

1          MR. STILLEY:  I'm not talking about the church's

2     return, I'm talking about individuals' returns who are

3     getting money from the operation of Mountain Park.  And if

4     Mountain Park is an entity capable of suing or being sued,

5     somebody needs to correct me on that.  I don't think they

6     are.  But nonetheless, somebody is -- there's a significant

7     revenue stream there and somebody is getting that revenue

8     stream, and I'd like to see who it is.

9          THE COURT:  I'm going to deny this, Mr. Stilley.

10    Mr. Oliver is going to give you those answers relative to

11    corporations not filing or the incorporated association not

12    filing tax returns.  It seems to me that this is rather

13    intrusive.  They are defendants, you are going to get their

14    net worth.  And it seems to me that you can do an

15    interrogatory or something about who is paid what and this

16    and that, because I think asking for tax returns is a bit

17    intrusive.  So I'm denying that.

18          MR. STILLEY:  Okay.

19          THE COURT:  Assuming that Mr. Oliver is going to

20    supply you with the information that he indicated.

21          MR. OLIVER:  I will, Your Honor.

22          THE COURT:  Okay, very well.  That's that.

23          Let's see, so those -- let's go back to the

24    complaint.  We were talking about complaints, petitions filed

25    against defendants in any state, federal court, or

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    administrative agency.  Who wants to respond?

2          MR. OLIVER:  Well, other lawsuits, Judge, are not

3    admissible so it's outside the scope of discovery.  John

4    Oliver.  I mean, if you want, Oscar knows what they are.  I

5    don't even know why he's asking.  Teri Young admitted in her

6    deposition she's traveled to all these states and gotten all

7    the documents.  So I don't know what there is that she hasn't

8    already gotten.

9          THE COURT:  What about that, Mr. Stilley?

10         MR. STILLEY:  Your Honor, they asked basically the

11   same question of my client, and we didn't have any complaint.

12   We gave them that information and I just figured that if it

13   was relevant for my client, it was relevant for their client

14   too.  We need to see what's going on here.

15         THE COURT:  Can you just list them for him,

16   Mr. Oliver?

17         MR. OLIVER:  I can, Your Honor.  I don't mind the

18   list, I mind the hunting up the pieces of paper.

19         THE COURT:  Well, what about that, Mr. Stilley?

20         MR. STILLEY:  Your Honor, if he makes a list and

21   gives me some idea where they are at, that would be

22   satisfactory.

23         THE COURT:  Fine, that's granted to that extent.

24         MR. OLIVER:  I can do that, Judge.

25         THE COURT:  Fine, thank you.  No. 4, request

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    documents of the money judgments ever entered against the

2    defendant in personal or professional capacity.

3         MR. STILLEY:  Your Honor, this is Oscar Stilley

4    here.  I think we can do the same thing, if they can just

5    give us a list of them and tell us where they are at.

6         MR. OLIVER:  That's easy, Judge.  I don't mind that

7    at all.

8         THE COURT:  It's granted to that extent.  And I

9    think -- let's see, the last thing I got are copies of

10   passports.  Why you worried about some passports,

11   Mr. Stilley?

12        MR. STILLEY:  Your Honor, I'm sure -- well, I'm not

13   sure you're aware of this.  There was some allegations of

14   potential drugging in this case and I want to see about

15   travel outside the country.

16        THE COURT:  What's that got to do with drugging?

17   I'm not following you there.

18        MR. STILLEY:  I think that's where they are getting

19   the drugs.

20        THE COURT:  Hey, there's so much drugs, all these

21   cases I got down there, they better stay inside the U.S.

22   Most of the drugs for all these cases I got, I think all the

23   drugs are here.

24        MR. OLIVER:  They are all produced in East Prairie.

25        THE COURT:  What about this, Mr. Oliver?  It seems a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    bit farfetched to me.

2           MR. OLIVER:  Your Honor, actually the passport

3    creates a right of privacy.

4           THE COURT:  I'm denying this.  It's a bit

5    farfetched, Mr. Stilley.

6           MR. STILLEY:  Okay.

7           THE COURT:  Anything else?

8           MR. OLIVER:  Judge, I think you've indicated

9    Mr. Stilley is going to redo some of these questions.  Oscar

10   and I talked about this briefly.  I think it would be

11   appropriate if you'd extend the discovery deadline by consent

12   to Thanksgiving.  It won't affect anything and that way Oscar

13   has plenty of time to make any modifications.  And if he

14   doesn't like the answers, he'll have enough time.  And quite

15   frankly, I need to go down and find the doctor down in Fort

16   Smith, Arkansas, which means I got to file an ancillary case

17   down there.

18          THE COURT:  Let me tell you this:  You know, every

19   month they have these numbers that come out in terms of how

20   many cases we've got pending, and I got a lot of cases in

21   Cape.  So that's where my problem is in terms of I got to get

22   some of those cases disposed of.

23          MR. OLIVER:  If we get 30 more days, it won't delay

24   anything else, Judge.  It doesn't affect any of your other

25   dates.

1          THE COURT:  Okay.  What about that, Mr. Stilley?

2          MR. STILLEY:  I think that's a wonderful idea,

3    Judge.

4          THE COURT:  Okay.  We'll extend it then 30 more

5    days.  I guess that will be -- I'm going to pull this

6    calendar out here.  Okay, we'll extend it to November, that's

7    a Friday, November 21st, okay.

8          MR. OLIVER:  Your Honor, I appreciate it.

9          MR. STILLEY:  Your Honor, before we close this off,

10   we haven't had any ruling on the request No. 13 to completely

11   copy Jordan's file.

12         MR. OLIVER:  Judge, if he doesn't have that, I will

13   certainly copy it myself and send to it him for both

14   institutions.

15         THE COURT:  Okay.  Well --

16         MR. STILLEY:  Excellent.

17         THE COURT:  Then 13 is moot.

18         MR. STILLEY:  How about 13 to 15, can we get the

19   same agreement?

20         MR. OLIVER:  I don't remember what the other two

21   are.

22         MR. STILLEY:  Actually 13 through 17, and that will

23   close it out.  It's educational or medical records, they will

24   be part of the file.

25         MR. OLIVER:  It's all in the file.  I will copy

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

1    that, Your Honor, everything in Palm Lane and everything at

2    Mountain Park that has Jordan Blair's name on it or was put

3    in his file that relates in any way.  I'll personally do it

4    and mail it to Mr. Stilley.

5              THE COURT:  Very well.  You satisfied, Mr. Stilley?

6              MR. STILLEY:  I'm very satisfied.

7              THE COURT:  You know, Mr. Stilley, you remind of the

8    story, a man was getting a divorce, he hadn't seen the

9    estranged wife for awhile.  He went to court and he saw her.

10   He didn't hardly recognize her, she was in pigtails, looked

11   like a child.  And she got on the witness stand and she

12   started crying.  And the judge started crying.  And the judge

13   looked at the estranged husband and said, "You have any

14   dreams?  We want those too."  You want everything,

15   Mr. Stilley.  Okay.

16             MR. OLIVER:  Thank you, Your Honor.

17             THE COURT:  Thank you all.  Take it easy.

18             MR. OLIVER:  Yes, sir.

19             (Court in recess at 12:14 p.m.)

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2            I, Susan R. Moran, Registered Merit Reporter, in

 3    and for the United States District Court for the Eastern

 4    District of Missouri, do hereby certify that I was present

 5    at and reported in machine shorthand the proceedings in the

 6    above-mentioned court; and that the foregoing transcript is

 7    a true, correct, and complete transcript of my stenographic

 8    notes.

 9            I further certify that I am not attorney for, nor

10    employed by, nor related to any of the parties or attorneys

11    in this action, nor financially interested in the action.

12            I further certify that this transcript contains

13    pages 1 - 25 and that this reporter takes no responsibility

14    for missing or damaged pages of this transcript when same

15    transcript is copied by any party other than this reporter.

16            IN WITNESS WHEREOF, I have hereunto set my hand

17    at St. Louis, Missouri, this _____ day of

18    _____, 2003.

19

20                              _____

21                              Susan R. Moran
                                Registered Merit Reporter

22

23

24

25
```