IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

JORDAN BLAIR                                                                                                    PLAINTIFF

vs.                                    Case No. 1:02CV88CAS

BOB WILLS, AKA BOBBY RAY WILLS, AKA W. B. WILLS,
BETTY SUE WILLS, SAM GERHARDT,
DEBORAH GERHARDT, BO GERHARDT, JULIE GERHARDT,
DREW PARRISH, ROBERT O'BRIANT, ROBERT KENNEDY,
DBA "MOUNTAIN PARK BOARDING ACADEMY,"
and PALM LANE BAPTIST CHURCH, INC.
                                                                                                                    DEFENDANTS

**TRIAL BRIEF**

Comes now Plaintiff and for his trial brief states:

**<u>Introduction</u>**

Defendants claim that Plaintiff is seeking damages for "chores." In fact, much of the work he performed was digging a pond, working on fences, clearing pastures of weeds, working cattle, and other work in no way related to the chores of ordinary life.

Defendants also claim that Plaintiff was adjudicated a delinquent. They fail to mention that Ron Blair, Jordan Blair's father, was his sole accuser at his trial. Ron Blair admitted in deposition that he had some concern that Jordan might make a criminal or "Family in Need of Services" complaint or petition with regard to an incident in which Ron Blair choked Jordan. There is some dispute over whether Jordan was choked to unconsciousness or merely laid still.

1

Ron Blair was the sole prosecution witness. Ron Blair, by the immediate transportation of Jordan Blair to Mountain Park Boarding Academy, became able to prevent any appeal of the adjudication, and also to prevent any complaint concerning his misbehavior.

## Background

Defendants claim that the juvenile court did not specify an academy. The order says "Baptist Boys Academy" in Missouri. Nonetheless, the Defendants provided affidavits to the Court claiming not to have received a copy of the order prior to March 15, 2002. When confronted with a copy of an order of the Crawford County Juvenile Court, showing that the order had in fact been faxed to Mountain Park Boarding Academy's fax number on December 17, 2001, Defendants provided no reasonable explanation for denying knowledge of the order prior to the departure of Jordan Blair from Palm Lane Academy.

Defendants claim that there are no witnesses to the battery. Plaintiff has listed certain persons as witnesses to the battery, which Defendants could call if they so chose. Concerning the claim that no attempt was made to get medical assistance, it is extremely difficult and sometimes impossible to get medical assistance for injuries that are suffered by persons in the control of Defendants. Reporting of violence sometimes results in nothing but more violence against the person complaining.

Defendants attempt to minimize the gravity of Plaintiff's claims in other ways, low-balling the hours and character of the work performed, etc. However, these are questions of fact for a jury to decide.

## CLAIMS AND ISSUES

### Battery

This case involves a claim of battery against Bo Gerhardt. Plaintiff anticipates that the battery claim will amount to a jury question of conflicting testimony. Plaintiff will allege that he was slammed up against a solid object, causing him substantial pain, and Defendant will deny that anything took place. The jury must decide the facts that the value, if any, of the damages.

*Beard v. Flying J, Inc.*, 266 F.3d 792, 803 (8th Cir. 2001) provides guidance:

> We believe that Nelson does not support Mr. Krout's argument. Although, as we have said, the court referred to the incident before it as a battery, there was no evidence to show that the defendants actually intended to drop the plaintiff. In this case, Mr. Krout was alleged to have intentionally committed an injurious act by touching Ms. Beard's breasts. The Nelson court, moreover, did not state or even intimate that it was abandoning the general rule that excludes intentional torts such as Mr. Krout's from the exclusive jurisdiction of the workers' compensation system. See *Wilson*, 558 N.W.2d at 137. We thus conclude that the court assumed that intentional torts committed by co-workers remained actionable despite the workers' compensation system, and we hold that Ms. Beard's battery claim is not within the exclusive jurisdiction of the workers' compensation system.
>
> Mr. Krout next complains that the district court erred by resubmitting the battery claim to the jury. The jury found that Ms. Beard proved her battery claim and awarded her $10,000 in punitive damages but left the space provided for a compensatory award blank. The district court, under the erroneous belief that an award of compensatory damages was a necessary prerequisite to awarding punitive damages under Iowa law, resubmitted the case to the jury and instructed it to award punitive damages only if it had awardedcompensatory damages. The jury then returned a verdict of $5,000 in compensatory damages and $5,000 in punitive damages.
>
> Mr. Krout maintains that there was nothing defective about the original verdict and that the case should therefore not have been returned to the jury. We agree. Under Iowa law, "an award of punitive damages does not depend on an award of compensatory damages," *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994), but merely upon a showing "that the defendant actually caused plaintiff some injury." *Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co.*, 510 N.W.2d 153, 156 (Iowa 1993). In other words, "the principles underlying exemplary damages are equally served whether actual damages are awarded or merely shown." *Pringle Tax Service, Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979).
>
> Mr. Krout maintains that he is entitled to judgment notwithstanding the verdict because there was no showing that Ms. Beard suffered any injury from the battery. Ms. Beard testified,

3

however, that after the battery, she felt "differently about things and people," could no longer trust others, and was confused and scared. When, as here, the defendant's conduct was intentional, a plaintiff is entitled to damages for emotional distress under Iowa law even if he or she suffered no physical injury. See *Mills v. Guthrie County Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 852 [Page 804] (Iowa 1990). Although the jury evidently found that any emotional injury suffered by Ms. Beard was not compensable, or decided that it could not quantify the damages for the emotional injury that she suffered, she nevertheless showed that she suffered some injury at the hands of Mr. Krout that was sufficient to uphold an award of punitive damages if otherwise appropriate.

Perhaps this is unnecessary, as a slamming of an individual up against a wall naturally and probably causes injury.  Furthermore, the Defendants offer nothing but bare assertions concerning the lack of injury.

### Fair Labor Standards Act claim

Defendants admit that religious organizations may be bound by the FLSA, citing an unpublished decision from the Fourth Circuit.  This is true.  Plaintiff submits that the facts at trial will show that the Defendants operate a business grossing $2 million to $3 million per year, perhaps more. An estimated 90% of this revenue is derived from interstate transactions.  The evidence will show that the Defendants' operations are interstate in character, their protests to the contrary notwithstanding.

The Eighth Circuit has disposed of the argument concerning the "production of goods" as well as the argument concerning the control of prisoners by private concerns, in an unpublished decision in *Barnett v. Young Men's Christian Association, Inc.*, No. 98-3625, 1999 U.S. App. LEXIS 3412 (Eighth Circuit 1999)
:

> First, we note that the FLSA's goal of protecting competition is not served by denying coverage to Barnett because the Ashurst-Sumners Act would not apply to preserve competition here: Barnett did not make goods to be sold in interstate commerce--he provided maintenance services. Second, this suit presents materially different facts than those before us in *McMaster*.

4

> This case is factually much closer to *Watson* or *Carter*, both of which we [*8] distinguished in *McMaster*. See id. at 979-80 (finding *Watson* distinguishable because inmates did not work in jail, were picked up at jail by private contractor, were left unguarded, were not assigned to work as part of their sentences but volunteered, and were paid directly; finding *Carter* distinguishable because inmates there sought relief against private company rather than prison, and because inmates were not required to work as part of their sentences). This suit was brought against a private entity, as was the case in both *Watson* and *Carter*, and not against a branch or representative of the county, state, or federal government, or against the prison or prison industries--where courts have denied FLSA coverage to prisoners. Cf., e.g., *Villarreal*, 113 F.3d at 204; *Nicastro v. Reno*, 318 U.S. App. D.C. 72, 84 F.3d 1446, 1447 (D.C. Cir. 1996) (per curiam); *Reimoneng*, 72 F.3d at 474; *Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993); *Hale*, 993 F.2d at 1389; *Harker v. State Use Indus.*, 990 F.2d 131, 132 (4th Cir. 1993); *Vanskike*, 974 F.2d at 806; [*9] *Miller v. Dukakis*, 961 F.2d 7, 8 (1st Cir.) (per curiam), cert. denied, 506 U.S. 1024, 121 L. Ed. 2d 590, 113 S. Ct. 666 (1992).

It is fairly difficult to find caselaw dealing with the particular facts involved in this case. However, the exemptions found at 29 U.S.C. § 213 demonstrate that Congress intended to reach many institutions that did not engage in traditional manufacturing. For example 29 U.S.C. § 213(a)(2) provides an exemption for an "amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if...." The section goes on to establish a number of conditions which may exempt such facilities, starting with an exemption for such facilities operating not more than 7 months a year.

If all such facilities, not being manufacturing or transportation facilities, were exempt, why would Congress define narrow exemptions? Such legislation would make no sense at all.

In this case, the Defendants made their motion for summary judgment. When the claim for summary judgment failed, they came back with other theories. These theories, being touched on only lightly in the trial brief, may be abandoned. However, Plaintiff as part of his proof intends to show that the Palm Lane and Mountain Park Boarding Academy routinely ship students from one facility to the

5

other as the need arises.  They get the vast majority of their business and revenues from outside their respective states.  They use a large quantity of labor for production of cattle and other goods, and also for other functions necessary to maintain their stream of revenue from interstate commerce.

Defendants also claim that most of them are not liable as not being the movers and shakers of the organization.  Mountain Park Boarding Academy in particular does not turn square corners with the world, leaving their organizational structure so amorphous that it is exceedingly difficult to know who is in charge.

However, the law is plain that a partnership may be formed by estoppel. *Spence v. Tatum*, 960 F.2d 65 (8th Cir. 1992) Plaintiff anticipates that the evidence will show that at least more persons than those admitted to be employers, if an employment relation be shown, are in fact jointly and severally liable for the wages as partners of the general enterprise.

**False Imprisonment**

The claim of false imprisonment is also the subject of a motion for reconsideration.  However, Plaintiff counsel submits that those issues will likely be fully briefed in the motions and briefs for summary judgment and reconsideration of that decision.  If the Court stands by its original decision, obviously there will be no questions concerning false imprisonment at trial.  Plaintiff counsel therefore submits that the most efficient approach is to deal with all false imprisonment issues in the briefs and motions previously mentioned.

Plaintiff counsel does intend to submit another set of jury instructions, in which the state law issues are taken from the Missouri Approved Instructions.  Due to the unforeseen unavailability of a battery instruction from MAI on the internet, Plaintiff counsel has ordered a complete copy of the

6

Missouri Approved Instructions for expedited delivery. Plaintiff counsel will endeavor to obtain agreement with respect to jury instructions, to the extent possible.

Respectfully submitted,

By: /s/ Oscar Stilley
Oscar Stilley, Attorney at Law
Central Mall Plaza Suite 520
5111 Rogers Avenue
Fort Smith, AR 72903-2047
(479)996-4109
(501)325-1815 FAX
Oscar@oscarstilley.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Oscar Stilley, by my signature above certify that I have this March 23, 2004 served defendants with a copy of this pleading electronically by email to: John Oliver, Attorney at law, Oliver, Oliver, & Waltz, PO Box 559, Cape Girardeau, MO, 63702-0559; and John Briggs, Attorney at law, Brown & James, P.C., 1010 Market Street, 20th Floor, St. Louis MO 63101-2000.