1                      UNITED STATES OF AMERICA
                    EASTERN DISTRICT OF MISSOURI
2                       SOUTHEASTERN DIVISION

3    JORDAN BLAIR,                    )
                                      )
4              Plaintiff,             )
                                      )
5         vs.                         )   No. 1:02-CV-88 CAS
                                      )
6    BOB WILLS, ET AL.,               )
                                      )
7              Defendants.            )

8
                        TRANSCRIPT OF JURY TRIAL
9
               BEFORE THE HONORABLE CHARLES A. SHAW
10                 UNITED STATES DISTRICT JUDGE

11                        April 14, 2004
                          Volume III
12

13   APPEARANCES:

14   For Plaintiff:      Mr. Oscar Stilley
                         511 Rogers Avenue
15                       Central Mall Plaza, Suite 520
                         Fort Smith, AR  72903
16
     For Defendants:     Mr. John L. Oliver, Jr.
17                       OLIVER, OLIVER & WALTZ
                         400 Broadway, P.O. Box 559
18                       Cape Girardeau, MO  63702

19                       Mr. John D. Briggs
                         BROWN AND JAMES
20                       1010 Market Street, 20th Floor
                         St. Louis, MO  63101
21
     REPORTED BY:        SUSAN R. MORAN, RMR
22                       Official Court Reporter
                         111 South 10th Street
23                       St. Louis, MO  63102
                         (314) 244-7983
24
     Proceedings recorded by mechanical stenography, produced by
25   computer-aided transcription.

I N D E X

INSTRUCTIONS TO THE JURY

   (By the Court)                              4


CLOSING ARGUMENTS

   (By Mr. Stilley)                           9
   (By Mr. Oliver)                           11
   (By Mr. Stilley)                          19

1          (The following proceedings were held outside the

2     hearing of the jury on April 14, 2004 at 9:12 a.m.:)

3          THE COURT:  Good morning.  Are you all satisfied

4     with the instructions and verdict form?

5          MR. STILLEY:  Yes, Your Honor, for the plaintiff.

6          THE COURT:  Okay.

7          MR. OLIVER:  Yes, sir.  I hope we did it to your

8     satisfaction.

9          THE COURT:  It looks good to me.  Fine.

10         Now, I'm inclined to read the instructions first.

11    That's normally the state procedure.  Many times in federal

12    court the instructions are read last, but I'm inclined to go

13    ahead and read these instructions in case you want to argue

14    them or use them in some kind of way.  So that's my

15    inclination to read these first.  Any objection to that?

16         MR. STILLEY:  None, Your Honor.

17         MR. OLIVER:  No, sir, I like it that way.

18         THE COURT:  Yeah, I think it's better.  If you so

19    desire, you can argue what they are.  Okay.  Let's bring the

20    jury out.

21         MR. OLIVER:  Your Honor, I'd again ask, respectfully

22    remind the Court that maybe the Court might say something to

23    the jury about the absence of the Fair Labor Standard Act.

24    I'm sure both of us will mention it, but they might believe

25    it better from Your Honor.

1          THE COURT:  Yes, I'll mention it.

2          (The following proceedings continued within the

3     hearing of the jury:)

4          THE COURT:  Good morning, ladies and gentlemen of

5     the jury.  We're now going to enter the instruction and

6     closing argument phase of this case.  And the Fair Labor

7     Standards Act portion of the case has been resolved.  So the

8     only remaining issue will be the plaintiff's battery claim.

9     And so that will be what will be addressed by counsel in

10    their argument, and that will be the remaining issue for you

11    to make a decision upon.

12          So the instructions:  Ladies and gentlemen of the

13    jury, the instructions that I gave at the beginning of the

14    trial and during the trial remain in effect.  I now give you

15    additional instructions.  Of course you must continue to

16    follow the instructions which were given earlier as well as

17    those that I give now.  You must not single out some

18    instructions and ignore others because all are equally

19    important.  This is true even though some of those I gave at

20    the beginning of the trial or during the trial are not

21    repeated here.

22          The instructions I'm giving you now are in writing

23    and will be available to you in your jury room.  I emphasize,

24    however, that this does not mean that they are more important

25    than the earlier instructions.  And, again, all instructions

1    whenever given and whether in writing or not must be

2    followed.

3           Neither in these instructions nor in any ruling,

4    action, or remark that I have made during the course of this

5    trial have I intended to give any opinion or suggestion as to

6    what your verdict should be.  That is entirely up to you.  If

7    I've occasionally made statements or asked questions, do not

8    assume that because I made statements or asked questions that

9    I hold any opinion on these matters.  The answers to these

10   questions or what your verdict should be.

11          In deciding what the facts are, you will have to

12   decide what testimony you believe and what testimony you do

13   not believe.  You may believe all of what a witness has said,

14   only part of it, or none of it.  In deciding what testimony

15   to believe, you may consider the witnesses' intelligence,

16   their opportunity to have seen or heard the things testified

17   about, the witness' memory, any motives the witness may have

18   for testifying a certain way, the manner of the witness while

19   testifying, whether the witness said something different at

20   an earlier time, the reasonableness of the testimony, and the

21   extent to which the testimony is consistent with any evidence

22   that you believe.

23          In deciding whether or not to believe a witness,

24   keep in mind that sometimes people hear and see things

25   differently and sometimes forget things.  You need to

1  consider, therefore, whether a contradiction is an innocent

2  misrecollection or a lapse of memory or an intentional

3  falsehood.  And that may depend upon whether it has to do

4  with an important fact or only a small detail.

5          In these instructions you're told that your verdict

6  depends on whether you find certain facts have been proved.

7  The burden of proving a fact is upon the party whose claim or

8  defense depends upon that fact.  The party who has the burden

9  of proving a fact must prove it by the greater weight or

10  preponderance of the evidence.

11          To prove something by the greater weight or

12  preponderance of the evidence is to prove that it is more

13  likely true than not true.  It is determined by considering

14  all of the evidence and deciding which evidence is more

15  believable.  If on any issue in the case the evidence is

16  equally balanced, you cannot find that issue has been proved.

17  The greater weight or preponderance of the evidence is not

18  necessarily determined by the greater number of witnesses or

19  exhibits a party has presented.  You may have heard the term

20  proof beyond a reasonable doubt.  That is a stricter standard

21  which applies in criminal cases.  It does not apply in civil

22  cases such as this.  You should, therefore, put it out of

23  your minds.

24          Your verdict must be for plaintiff if you believe:

25  First -- and the only remaining defendant in this case is Bo

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    Gerhardt, so let me say that also.  Your verdict must be for

2    plaintiff if you believe defendant intentionally pushed

3    plaintiff.  And second, defendant thereby caused a contact

4    with the plaintiff which was offensive to plaintiff.  And

5    third, such contact would be offensive to a reasonable

6    person.

7         If you find in favor of Plaintiff Jordan Blair and

8    against Defendant Bo Gerhardt, then you must award Jordan

9    Blair such sum as you believe will fairly and justly

10   compensate Jordan Blair for damage you believe Jordan Blair

11   sustained as a direct result of the occurrences mentioned in

12   the evidence.

13        In conducting your deliberations and returning a

14   verdict, there's certain rules that you must follow.  First,

15   when you go to your jury room you must select one of your

16   members to act as your foreperson.  That person will preside

17   over your discussions and speak for you here in court.

18        Second, it is your duty as jurors to discuss this

19   case with one another in your jury room.  You should try to

20   reach agreement if you can do so without violence to

21   individual judgment because your verdict must be unanimous.

22        Each of you must make your own conscientious

23   decision, but only after you have considered all of the

24   evidence, discussed it fully with your fellow jurors, and

25   listened to the views of your fellow jurors.  Do not be

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    afraid to change your opinions if the discussion persuades

2    you that you should, but do not come to a decision simply

3    because the other jurors think that it is right or simply to

4    reach a verdict.  Remember at all times that you are not

5    partisans, you are judges, judges of the facts.  Your sole

6    interest is to seek the truth from the evidence in the case.

7         Third, if you need to communicate with me during

8    your deliberations you may send a note to me through the

9    marshal or bailiff signed by one or more of you jurors and

10   I'll respond as soon as possible either in writing or orally

11   here in open court.

12        Remember that you should not tell anyone including

13   me how your votes stand numerically.  Your verdict must be

14   based solely on the evidence and the law which has been given

15   in the instructions.  Your verdict must be unanimous.

16   Nothing that I have a said or done is intended to suggest

17   what your verdict should be.  That is entirely up to you to

18   decide.

19        Finally, the verdict form is the notice of the

20   decision that you reach in the case.  And you will take this

21   verdict -- form of verdict with you to your jury room and

22   when each of you have agreed upon a verdict, your foreperson

23   will fill in the verdict form, sign it, and date it and

24   advise the marshal or bailiff that you're ready to return to

25   the courtroom.  And you will return these -- these to the

1    courtroom with any instructions or other materials that you

2    may have.

3         We're now going to commence with the closing

4    arguments.  Okay.  Mr. Stilley, you ready?

5         MR. STILLEY:  Thank you, Judge.  May it please the

6    Court, counsel, ladies and gentlemen of the jury.  Thank you

7    very much for your patience and kind attention in this case.

8    I know this has taken a little bit longer than you might

9    expect for something of this nature.  At this point in time

10   the only surviving claim for your consideration turns on the

11   credibility of witnesses.

12        We've got the defendant, Bo Gerhardt, saying that he

13   did not commit any battery.  And we've got another defendant,

14   Drew Parrish, who says I was there and I didn't see it

15   happen.  And we've got the plaintiff saying this happened to

16   me.

17        Let's think about this.  The plaintiff stated that

18   he was slammed up against a sink and it hurt overnight.  He

19   didn't say it injured my back and I was hurt for a long time.

20   He didn't make a big story.  He didn't say that anybody else

21   hit him.  If somebody was going to lie, would they make a lie

22   of that nature with that sort of a story?  This story has all

23   the earmarks of the truth.

24        As a matter of fact, in order to explain, even to

25   try to let you understand why did he ask for compensation for

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    that, I allowed him to explain what's the difference between

2    this hit and a hit that you take on the football field.  He

3    didn't tell you, well, that was a lot harder than any of the

4    hits I took on the football field.  He said on the football

5    field there are rules.  And basically -- he didn't say all

6    this, but basically what he's saying is I know what causes

7    you to get hit.  I know how you keep from getting hit.  At

8    Mountain Park concerning this incident of battery, I didn't

9    know what caused me to get hit, and I didn't have any way to

10   understand the rules.

11        The defendants themselves say we give the parents a

12   student handbook to the parents.  We don't give it to the

13   students.

14        And now, as far as physical injury, what he said was

15   it hurt overnight.  That's all he said.  He said as far as

16   mental and emotional distress, what that caused him to do was

17   be fearful of anything he did because he didn't know what

18   would cause further injury to him.

19        And I'd respectfully submit to you that on the basis

20   of this when you consider these competing stories that you

21   should give credit to Jordan Blair's story and award him as

22   the Court said fair and just compensation.  And I'm willing

23   and more than happy to leave that to you to let you decide

24   what is the sense of this community as to what is fair and

25   just compensation for an injury of this nature.  Thank you so

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

 1   much for your time.

 2           MR. OLIVER:  May it please the Court.

 3           THE COURT:  Mr. Oliver.

 4           MR. OLIVER:  Ladies and gentlemen, Mr. Stilley,

 5   Mr. Blair.  The last three days the eight of you have had an

 6   opportunity to participate in something that's unique to the

 7   United States, and that's our jury system.  This the only

 8   country in the world that it had enough sense to entrust

 9   decision making to our citizens.  We have an opportunity,

10   small opportunities to participate in our democracy.  We have

11   an opportunity to vote.  We have an opportunity from time to

12   time to serve in the armed forces.  We have numerous

13   charitable opportunities.

14           One of the opportunities that we forget about

15   because it's an inconvenience is jury duty.  In our system,

16   it's a system that has lasted for over 200 years, takes good

17   citizens who by reason of their background, education, and

18   experience bring a wealth of knowledge and we let those

19   people, you, decide disputes.

20           You know, they used to do this in England, each side

21   would go out and hire a champion and the person that had the

22   most resources, the fanciest tools, they would hire the

23   biggest champion and get on the biggest horse, and if the

24   defendants didn't have or the defendant didn't have that kind

25   of money or that big horse, you know, you've all seen the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    Prince Valient movies, that's really how they did it, each

2    champion galloped down the road on the horse, and the biggest

3    and strongest always won.  That didn't always produce the

4    right result.

5         So we have a jury system, and we believe in that

6    system.  And that's why we're here because we trust you to

7    hear the evidence and to do what the judge has indicated is

8    your duty, and that's to decide the facts based on what he

9    has told you the law is.

10        Bo in particular is grateful for your service.  I'm

11   grateful for your service.  I'm an officer of the court.

12   Without you we don't function.  Without you we are not a

13   democracy.  We appreciate your time.

14        I also understand in this case some of the

15   difficulty you've had because you heard two days and all this

16   stuff about Fair Labor Standards Act, which is now not for

17   your decision.  The judge has decided that as a matter of

18   law.  So the only thing that that evidence matters to you is

19   as it relates to the credibility of the witnesses,

20   particularly Drew Parrish and Bo as relates to what actually

21   happened on October the 24th.  And then the rest of the

22   reasons as it bears on who was telling the truth and why.

23        You know, this lawsuit started a long time before we

24   got here today, before you were sworn in on Monday.  Mountain

25   Park, which employs Bo, takes troubled youth, troubled youth.

1    We have a form that indicates for every potential applicant

2    what their problems are.  We ask a series of things, what are

3    their behavior problems, drug or alcohol, sexual activity,

4    runaway, wrong friends, failing school, rebellion,

5    disrespect, out of control behavior disorders.

6          Now, what Jordan's problems were are not part of

7    this case.  What Jordan's problems are are not part of the

8    case.  But when his parents in the exercise of their parental

9    judgment got worried enough to turn to the institution of

10   last resort starting in October 19th of 2000, it was because

11   Jordan was troubled.  It was -- it was because Jordan was in

12   difficulty in a residential placement facility.  It was the

13   last resort.

14         And when his parents came on October the 20th and

15   enrolled him, it was because of that.  They are the ones that

16   were trying to live with him and could not.  And on October

17   the 24th he came to Mountain Park, what his parents thought

18   would be his choice.  And how did he describe that he came?

19   He came in handcuffs, not handcuffs that we put on, not

20   handcuffs his parents put on.

21         Yet when he came he was greeted by Drew, Drew

22   Parrish, who remembers it because of that.  He's greeted by

23   Drew on the 24th.  Who is Drew Parrish?  Drew Parrish is a

24   product of Mountain Park.  Three years there, junior staff,

25   staff, is no longer employed.  He's pursuing his education at

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    Crown Bible College.  Where is Crown College?  Knoxville,

2    Tennessee.  He drove from Knoxville, Tennessee to here

3    yesterday when Jordan identified him as a witness.  Why did

4    he drive all the way across the state of Tennessee in to

5    Missouri?  Well, one time he was a defendant in this case but

6    not in the battery part.  But he came from bible college here

7    so that the eight of you would know the truth, so that the

8    eight of you would know what happened.

9         So what did happen?  Jordan comes in handcuffs just

10   like we told you.  The handcuffs were removed.  Jordan and

11   Matt Elmore -- Drew and Matt Elmore then take Jordan into the

12   dorm and downstairs and sit him on the couch.  Matt Elmore,

13   former student.  You've heard from former students.  Where is

14   Matt Elmore?  If this was true, if Matt Elmore witnessed

15   this, don't you think that they would have Matt Elmore

16   sitting out there and you would have heard from Matt Elmore?

17   Don't know.  You didn't.

18        So they take him downstairs.  They sit him on the

19   couch.  Talk to him, start explaining things to him.  Bo

20   comes in.  That's part of his job.  He comes in.  He talks to

21   them.  And what happens at that point in time?  The boy is

22   like every other young man who comes, given soap and a towel

23   and told to go take a shower.  That's the way you start.

24   Object No. 1, take a shower.  That's the first step.

25        And Mr. Stilley and Mr. Blair between the two of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1   them, they can't even get straight what their story is.

2   You'll recall, I wrote it down.  Mr. Stilley told you in

3   opening statement that Bo slammed him.  Jordan wasn't willing

4   to go quite that far, so Jordan had him shoved.  Mr. Stilley

5   wants to make it a slam again this morning.  Pejorative

6   adjectives, attack words.  Attack words like indoctrination.

7        So what happened?  Bo -- did Bo -- did Bo push and

8   shove him, offensively touch him?  You notice the instruction

9   they submitted says offensive touching.  It did not happen.

10  And why do I know it did not happen?  It did not happen

11  because Bo said it didn't happen.  And Drew Parrish drove

12  here from bible college to tell you that it didn't happen.

13  And what did Drew Parrish tell you, if he saw it, he would

14  have reported it.  Why?  Because they believe.

15       Know the truth and the truth will set you free.

16  They believe.  This is a fundamental independent Baptist

17  institution.  They believe.  They operate to save children

18  based on this belief.  And they don't need to make things up.

19  If Bo makes a mistake, Drew would have corrected him by

20  reporting it.  It didn't happen.

21       The judge has told you in Instruction No. 3 that

22  you're the sole judge of the credibility of the witnesses.

23  And you need to ask yourself or you will ask yourself why

24  would this young man and his attorney if they can get their

25  stories straight about what happened, why did they say, why

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1  did they do?  Well, let's just look at motives.  What's the

2  root of all evil.  Money is the root of all evil.  The love

3  of money is the root of all evil.  Money is an obvious

4  objective.  Why would you say something to get money?  Is

5  that the real reason?  I sort of doubt it.  I sort of doubt

6  it.  What kind of person has a lawyer that stands up in

7  opening statement and starts out by saying this is not a case

8  about religion, I'm a Baptist, Bo -- Jordan is a Baptist, and

9  he's a born again Christian, and then has his client get on

10  the stand and say he's nondenominational, and having said

11  that he's nondenominational calls church indoctrination.

12  Think about that for a minute.  Church in this courtroom is

13  indoctrination.  It's important.

14       But why do you have a slick political correctness

15  type of attack where teaching religion and exposing a child

16  to the wishes of their parents becomes indoctrination?  When

17  you have those kind of things, you have those kind of things

18  when you want to get, even when you want to retaliate against

19  somebody.  Why would you want to retaliate?  Well, let's

20  think about this for a minute.  Jordan's parents put him

21  there.  He didn't want to be there.  They put him from

22  whatever troubled environment he was in into a rigid

23  environment, a strict environment.  Rule No. 1, get up; Rule

24  No. 2, brush your teeth; Rule No. 3, clean yourself; Rule

25  No. 4, make your bed; Rule No. 5, clean up after yourself.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1     All the things that all of us that have children wish our own

2     kids did.

3           But from a troubled structure to a rigid, one, two,

4     three, four, five, a rigid structure.  He doesn't want to be

5     there.  He resents his parents.  He resents the situation.

6     He resents the discipline.  He resents the structure.  Why

7     does he pick on Bo?  Why does he pick on Bo?  Well, I want to

8     suggest why he picks on Bo.  Because Bo didn't touch him.  Bo

9     didn't slam him.  Bo didn't shove him.  Bo didn't push him.

10    What did Bo do that leads to this lawsuit?  What Bo did was

11    administer the diagnostic test.

12          You remember Brother Sam explained that and Bo

13    explained and Brother O'Brient explained that when you have

14    your academics, that what you do is they give you a

15    diagnostic test to see where your level is, and then they

16    start you at that level.  Well, according to Bo after his

17    diagnostic test he had to start out at the fifth grade level.

18    When he got around to writing his parents, it was the 11th

19    grade and repeat his junior year.

20          But ladies and gentlemen, you know what stuck in

21    this young man's crawl, what stuck in this young man's crawl

22    and why we're really here today besides all these collateral

23    motivations, the money, the structure, the rebellion, the

24    handcuffs, besides all those things, you know why we're here

25    today?  Because he had to do remedial work as a result of the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    test that Bo Gerhardt administered.

2            And that's eating at this guy.  It's in his letters.

3    Twenty-eight letters.  I can't graduate this year.  I'm not

4    going to be able to go to graduation.  I have to repeat the

5    11th grade.  Fifth grade remedial work.  He took the test, he

6    didn't do well.  Bo administered the test.  It's the only

7    explanation that I can think of.

8            THE COURT:  Two minutes, Counsel.

9            MR. OLIVER:  Thank you, Your Honor.

10           Ladies and gentlemen, you and you alone are the

11   judge of credibility of these witnesses.  Bo and Drew

12   Parrish, the two witnesses that were identified by the

13   plaintiff have told you the truth so help them God, the truth

14   that they live and believe every day.  They live their lives

15   based on that truth.  They did not, Bo Gerhardt did not push,

16   shove, or offensively touch Jordan Blair on the 24th day of

17   October 2001.  This boy came a troubled boy in handcuffs.  A

18   troubled boy who had to have remedial education.  A troubled

19   boy who blames Bo Gerhardt for what his problems were.

20           When you go back into to the privacy of your jury

21   room and deliberate, please, when you fill the verdict out,

22   know the truth, and the truth is that your verdict must be

23   for Bo Gerhardt because this battery did not happen.  It

24   didn't happen.  They can't even describe it the same way.

25   There is no indoctrination.  There's no push.  There's no

1    shove.  There's only right truth and truth.  And the truth

2    is, the truth is like Drew Parrish told you and more

3    importantly like Bo told you, this did not happen.

4         And we trust your judgment.  We trust the oath that

5    you took.  And we know that after your deliberation you will

6    do the right thing and return a verdict for Bo Gerhardt.

7         Thank you.

8         MR. STILLEY:  Ladies and gentlemen, let me say this:

9    Even not saying anything about Jordan Blair, if any person

10   goes to jail, they are entitled to a copy of the rules.  They

11   are entitled to know what gets you in trouble and what

12   doesn't.  Even if you go to jail, you're still entitled to

13   the sanctity of your person.  A jailer can't shove you or

14   push or however they want to say it or hit you without cause.

15   That is a violation of civil rights.  It's not tolerated in

16   our society.

17        And there's a suggestion that, well, Drew Parrish

18   was just identified here recently, so we had to call him from

19   outside to come here.  Well, he was identified as a

20   defendant.  There were depositions done in which the

21   witnesses to this incident were identified.  Surely they

22   can't realistically say this came as a surprise to them.

23   They knew about it.

24        There's a suggestion that this -- it's just about

25   greed, this is about money.  No, this is not about greed,

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

1    this is not about money.  If Mr. Blair doesn't get $2 for

2    Tylenol or $200,000, he was wronged.  He doesn't like that.

3    He doesn't think that's supposed to happen in our society,

4    and he wants some accountability.  He wants a judgment that

5    that is wrong, that that is offensive contact.  It's not

6    tolerated in our society.  And the amount of damages,

7    whatever it is, that you find justly and reasonably

8    compensates him for that wrong that he's suffered.

9         I don't recall saying that he was Baptist.  I recall

10   saying that he was a person of faith.  And let me show you.

11   You've got a number of letters here, and I'm sure you all

12   know that when a person writes a number of letters or a great

13   deal of handwriting of any sort, they reveal a little bit

14   about themselves in more ways than one.  And you can take a

15   look at these.  But if you need to take a look, those will

16   tell you a lot about the story.  You can learn about this if

17   you come to a situation where you need to find things out

18   because they're admitted into evidence, they are evidence in

19   this case.

20        Exhibit 20 is an example of why the plaintiff would

21   say that he was indoctrinated rather than provided the

22   religious training that he expected.  What did he say?  He

23   said, here are a few things I've learned, speaking in tongues

24   is false doctrine.  The Christian music I listen to is

25   wicked.  Our church is wicked.  The music you sing is wicked.

1    Instruments they use are wicked.  Drums, electric guitar is

2    wicked, and the way they sing is wrong.

3            Now, does that sound like somebody that is just

4    satisfied?  Okay.  I'm a Baptist, and I'm just going to do

5    things -- well, just making a complaint lately, Johnnie come

6    lately complaint about what's going on.  Of course not.  He

7    complained to his parents.  He told them what they were

8    saying.  And you can see on the back side of the letter that

9    Bo Gerhardt says, "Call and I can help you respond."  So the

10   defendants can't say they didn't know about this.  They did

11   know about this.  And when you look at the bottom, they want

12   to make out that this person is not a Christian, is an

13   unbeliever or something like that.  Let's look what he asked

14   for along with work boots.  I need a pocket bible.

15           THE COURT:  One minute, Counsel.

16           MR. STILLEY:  Thank you, Judge.  A person who was

17   had no belief in Christian religion would not be asking for a

18   bible.  And as to the idea about this, the educational parts,

19   you know, there's some things that are out of this case, but

20   once again if you need to see what he said about his

21   educational requirements, look in the letter or you can

22   recall what he said from the stand about having completed the

23   requirements of graduation.

24           Thank you very much for your attention.

25           THE COURT:  Michelle, will you take the jury to a

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

1   safe and secure place so they may commence their

2   deliberations.  Here are the last instructions and the

3   verdict form.

4          (Jury sent to deliberate at 9:43 a.m.)

5          (The following proceedings were held at 11 a.m.)

6          THE COURT:  Good morning again, ladies and gentlemen

7   of the jury.  I understand you all have reached a verdict.

8   Is that correct?

9          JUROR SWINEY:  Yes.

10          THE COURT:  Clerk, publish the verdict, please.

11          THE CLERK:  On Plaintiff Jordan Blair's claims

12   against Defendant Bo Gerhardt as submitted in Instruction

13   No. 5, we find in favor of Jordan Blair.  We find the

14   Plaintiff Jordan Blair's damages to be $20,000.  Signed by

15   the foreperson this 14th day of April 2004.

16          Ladies and gentlemen of the jury, is the verdict I

17   have just read your true and correct verdict?

18          THE JURORS:  Yes.

19          THE COURT:  Does either party wish to have the jury

20   further polled or individually polled?

21          MR. OLIVER:  No, sir.

22          MR. STILLEY:  No, Your Honor.

23          THE COURT:  Very well.  Ladies and gentlemen of the

24   jury, I want to thank you for your time, attention, and

25   service.  It's not an easy job being a juror.  The admonition

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    is lifted.  You can discuss this case as fully and freely

2    with anyone you choose.

3         We do have a rule within this federal court system,

4    the lawyers cannot inquire of you.  If you want to talk to

5    them, that's up to you.  You can talk to anyone you choose

6    about this case.

7         So thank you so much for your service.  You're

8    excused.

9         (Jury dismissed.)

10        THE COURT:  Anything else?

11        MR. STILLEY:  No, Your Honor.

12        THE COURT:  Thank you all so much.

13        (Court in recess at 11:03 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1              C E R T I F I C A T E

2              I, Susan R. Moran, Registered Merit Reporter, in

3    and for the United States District Court for the Eastern

4    District of Missouri, do hereby certify that I was present

5    at and reported in machine shorthand the proceedings in the

6    above-mentioned court; and that the foregoing transcript is

7    a true, correct, and complete transcript of my stenographic

8    notes.

9              I further certify that I am not attorney for, nor

10   employed by, nor related to any of the parties or attorneys

11   in this action, nor financially interested in the action.

12             I further certify that this transcript contains

13   pages 1 - 24 and that this reporter takes no responsibility

14   for missing or damaged pages of this transcript when same

15   transcript is copied by any party other than this reporter.

16             IN WITNESS WHEREOF, I have hereunto set my hand

17   at St. Louis, Missouri, this _____ day of

18   _____, 2004.

19

20                        _____

21                        /s/ Susan R. Moran
                          Registered Merit Reporter

22

23

24

25